UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARCY AARON HARPER, | **1:17-cv-00606-DAD-GSA-PC** |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT VARANASI'S MOTION FOR SUMMARY JUDGMENT BE GRANTED** |
| v. | **(ECF No. 34.)** |
| DR. RAMOS, et al., | |
| Defendants. | **OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS** |

## I.    BACKGROUND

Darcy Aaron Harper ("Plaintiff") is a prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  This case now proceeds against defendants Dr. Htay, Dr. Ramos, and Dr. Varanasi for providing inadequate medical care in violation of the Eighth Amendment.[1]

On January 8, 2021, defendant Dr. Varanasi ("Defendant") filed a motion for summary judgment.  (ECF No. 34.)  On February 2, 2021, Plaintiff filed an opposition to the motion.[2] (ECF No. 37.)  On February 9, 2021, Defendant filed a reply to the opposition.   (ECF No. 38.) Pursuant to Local Rule 230(*l*), this motion is now before the court.

For the reasons set forth below, the court recommends that the court grant summary judgment to Defendant Varanasi.

---

[1] On October 31, 2019, the court issued an order dismissing all other claims and defendants from this action based on Plaintiff's failure to state a claim.  (ECF No. 16.)

[2] Together with the motion for summary judgment, Defendant served Plaintiff with the requisite notice of the requirements for opposing the motion for summary judgment.  Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).  (ECF No. 34-3.)

## II.   SUMMARY JUDGMENT STANDARD

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he only needs to prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)).  If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."  Id.  This requires Plaintiff to "show more than the mere existence of a scintilla of evidence."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The court determines only whether there is a genuine issue for trial.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In arriving at these findings and recommendations, the court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.    PLAINTIFF'S ALLEGATIONS -- SECOND AMENDED COMPLAINT[3]

Plaintiff is presently incarcerated at the California Health Care Facility in Stockton, California. The events at issue in the Second Amended Complaint allegedly occurred when Plaintiff was incarcerated at Wasco State Prison (WSP) in Wasco, California. Plaintiff's allegations follow:

Plaintiff was sentenced to 16 years to life in Fresno County. Nurse Vivian [not a defendant] at Fresno County Jail emailed WSP Medical and asked them if they could accommodate an inmate who needed peritoneal dialysis. WSP Medical advised her that they could take care of that. When Plaintiff arrived at WSP they took all of the dialysis medicine that was sent with him. WSP could not let Plaintiff do dialysis at the prison and sent him out to Mercy Hospital in Bakersfield for dialysis about twice a week. WSP Medical later decided not to send Plaintiff out for dialysis anymore. Dr. Ramos told Plaintiff that Dr. Varanasi had a meeting instructing medical staff not to send Plaintiff out for dialysis anymore. This resulted in cardiac arrest after 7 days. Plaintiff went into a coma, had blood blisters all over his body, ruptured his pancreas, and lost oxygen to his brain. Dr. Ramos refused Plaintiff access to medical care in July 2014 after being instructed not to do so by Dr. Varanasi. Dr. Ramos told Plaintiff that Dr. Varanasi told him not to give Plaintiff dialysis. Dr. Htay, B-yard doctor at WSP, refused Plaintiff dialysis for 7 days in July 2014. R.N. Blocher [not a defendant] lied to Dr. Varanasi concerning

---

[3] Plaintiff's Second Amended Complaint is verified, and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence. Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004). The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible. The court will address, to the extent necessary, the admissibility of Plaintiff's evidence in the sections which follow.

how Plaintiff was responding to hemodialysis. Dr. Varanasi had a meeting in July 2014 at WSP where he instructed all medical staff not to send Plaintiff out for dialysis and to just let him die. In July 2014, R.N. Wee [not a defendant] did nothing to get Plaintiff life-saving medical attention. Plaintiff seeks monetary damages and an apology from Dr. Varanasi. He also wants the court to prosecute Dr. Varanasi.

## IV. PLAINTIFF'S MEDICAL CLAIM – LEGAL STANDARD

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting

Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S.

825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" <u>Id.</u> (quoting <u>Gibson v. County of Washoe, Nevada</u>, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." <u>Id.</u> at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." <u>Id.</u> (citing <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

## V.    DEFENDANT VARANASI'S UNDISPUTED FACTS (SSUF)[4]  (ECF No. 39-2.)

Defendant Varanasi submitted this separate statement of undisputed facts in support of his motion for summary judgment.

**Issue No. 1:**  The undisputed facts establish that Dr. Varanasi was never deliberately indifferent to Mr. Harper's medical needs.

| Defendant's Undisputed Material Facts | Supporting Evidence |
|---|---|
| 1. Darcy Aaron Harper ("Plaintiff or "Mr. Harper") is a California State Prison inmate and was incarcerated at Wasco State Prison at the time of the events giving rise to this lawsuit. | Second Amended Complaint (ECF 11, pages 1 and 5) |

---

[4] Plaintiff failed to properly address Defendant's statement of undisputed facts, as required by Local Rule 260(b). Accordingly, the court may consider Defendant's assertions of fact as undisputed for purposes of this motion. <u>Id</u>; Fed. R. Civ. P. 56(e)(2). However, in light of the Ninth Circuit's directive that a document filed *pro se* is "to be liberally construed," <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S.Ct. 285, 292, and Rule 8(e) of the Federal Rules of Civil Procedure provides that "[p]leadings shall be construed so as to do justice," <u>see</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007), the court shall strive to resolve this motion for summary judgment on the merits.

| Defendant's Undisputed Material Facts | Supporting Evidence |
|---|---|
| 2. Mr. Harper was transferred from the Fresno County Jail to the Wasco State Prison ("WSP") on June 17, 2014. | Exhibit D, page 13 Declaration of Keith Klein, M.D. ("Klein Decl."), ¶ 5(a) and Exhibit B, page 27 *(The references to Dr. Klein's declaration are included in this Statement of Undisputed Facts for the convenience of the Court, so it can see the cross-references between the supporting evidence and the paragraphs of Dr. Klein's declaration in which he relies on the cited materials.)* |
| 3. The records demonstrate that Mr. Harper had an extensive past medical history that included end stage renal failure, type II diabetes, diabetic neuropathy and retinopathy, peripheral vascular disease, fibromyalgia, osteoarthritis, Hepatitis C, gastroparesis, GERD, chronic sinusitis, degenerative disc disease, DVT, pulmonary embolism, hypertension, hyperlipidemia and borderline schizophrenia. He also had an extensive history of intravenous drug use. | Exhibit D, pages 13, 19-22 Exhibit E, pages 28 Klein Decl, ¶ 5(a) and Exhibit B, pages 27, 33- 36, and 42 |
| 4. At the time he was transferred to WSP, Mr. Harper was receiving peritoneal dialysis secondary to end stage renal disease. | Exhibit D, page 13 Klein Decl, ¶ 5(b) and Exhibit B, page 27 |
| 5. The records indicate that the WSP dialysis center was not equipped to provide peritoneal dialysis, and Mr. Harper was sent to Mercy Southwest Hospital on June 17, 2014 to continue peritoneal dialysis and to establish hemodialysis. | Exhibit D, page 13 Klein Decl, ¶ 5(b) and Exhibit B, page 27 |

| Defendant's Undisputed Material Facts | Supporting Evidence |
|---|---|
| 6. Mr. Harper was seen in the Emergency Department where it was documented that he did not look severely fluid overloaded and there was no indication for emergent dialysis. | Exhibit E, pages 25-26 Klein Decl, ¶ 5(c) and Exhibit B, pages 39-40 |
| 7. He was admitted to Mercy Southwest Hospital by hospitalist Mushtaq Ahmed, M.D., who requested a Nephrology/renal consultation. | Exhibit E, pages 29-30 Klein Decl, ¶ 5(c) and Exhibit B, pages 43-44 |
| 8. On June 18, 2014, Dr. Varanasi provided a Nephrology consultation to Mr. Harper at Mercy Southwest Hospital. | Exhibit E, pages 31-32 Klein Decl, ¶ 5(d) and Exhibit B, pages 45-46 |
| 9. Dr. Varanasi documented that Mr. Harper had been on dialysis for ten years and was using peritoneal dialysis in the Fresno County Jail. However, he was transferred to Wasco State Prison where peritoneal dialysis was not available. | Exhibit E, pages 31-32 Klein Decl, ¶ 5(d) and Exhibit B, pages 45-46 |
| 10. Dr. Varanasi documented that Mr. Harper reported multiple vascular access failures, but had a functioning access point in the right upper arm (an AV fistula) that had not been tried. | Exhibit E, pages 31-32 Klein Decl, ¶ 5(d) and Exhibit B, pages 45-46 |
| 11. Mr. Harper also reported that his subclavian vein was stenosed and an attempt to open it about two months prior was partially successful with significant improvement of collateral circulation. | Exhibit E, pages 31-32 Klein Decl, ¶ 5(d) and Exhibit B, pages 45-46 |
| 12. Dr. Varanasi further recorded that Mr. Harper was clinically stable at the time. | Exhibit E, pages 31-32 Klein Decl, ¶ 5(d) and Exhibit B, pages 45-46 |

| Defendant's Undisputed Material Facts | Supporting Evidence |
|---|---|
| 13. Due to the fact Mr. Harper was serving a life sentence and peritoneal dialysis was unavailable at the prison, Dr. Varanasi documented that Mr. Harper needed to be switched to hemodialysis. | Exhibit E, pages 31-32 Klein Decl, ¶ 5(d) and Exhibit B, pages 45-46 |
| 14. Dr. Varanasi noted that he had a discussion with Mr. Harper regarding the need to switch to hemodialysis and suggested the AV fistula be tried for dialysis access. | Exhibit E, pages 31-32 Klein Decl, ¶ 5(d) and Exhibit B, pages 45-46 |
| 15. If that approach were unsuccessful, Dr. Varanasi noted that he would obtain a vascular surgery consultation regarding placement of a stent in the subclavian vein. | Exhibit E, pages 31-32 Klein Decl, ¶ 5(d) and Exhibit B, pages 45-46 |
| 16. Dr. Varanasi wrote that Mr. Harper was very reluctant and apprehensive about using the right arm fistula. | Exhibit E, pages 31-32 Klein Decl, ¶ 5(d) and Exhibit B, pages 45-46 |
| 17. Dr. Varanasi further documented that, after a lengthy discussion, he decided that Mr. Harper would be continued on peritoneal dialysis while he was in the hospital and would be evaluated by vascular surgery regarding the vascular access. | Exhibit E, pages 31-32 Klein Decl, ¶ 5(d) and Exhibit B, pages 45-46 |
| 18. Once the right upper arm AV fistula was cleared for use by the vascular surgeon, Mr. Harper would be started on hemodialysis. | Exhibit E, pages 31-32 Klein Decl, ¶ 5(d) and Exhibit B, pages 45-46 |
| 19. Dr. Varanasi discussed Mr. Harper's case in detail with a vascular surgeon, Jose Soto, M.D., who agreed to see the patient that same day. | Exhibit E, pages 31-32 Klein Decl, ¶ 5(d) and Exhibit B, pages 45-46 |

| Defendant's Undisputed Material Facts | Supporting Evidence |
|---|---|
| 20. There are no further documented interactions between Mr. Harper and Dr. Varanasi during his hospitalization of June 17 - 20, 2014. | Exhibit E Klein Decl, ¶ 5(d) and Exhibit B |
| 21. On June 18, 2014, Dr. Soto provided a Vascular Surgery consultation to Mr. Harper at Mercy Southwest Hospital. | Exhibit E, pages 33-34 Klein Decl, ¶ 5(d) and Exhibit B, pages 47-48 |
| 22. Dr. Soto also documented Mr. Harper had a functioning AV fistula in the right upper arm with an established wide and prominent venous collateral circulation that could and should be accessed for hemodialysis. | Exhibit E, pages 33-34 Klein Decl, ¶ 5(d) and Exhibit B, pages 47-48 |
| 23. Dr. Soto recommended a fistulogram to evaluate for evidence of local areas of stenosis in the trajectory of the translocated fistula or any areas of central stenosis that could be dilated. | Exhibit E, pages 33-34 Klein Decl, ¶ 5(d) and Exhibit B, pages 47-48 |
| 24. Mr. Harper refused the proposed care. | Exhibit E, pages 33-34 Klein Decl, ¶ 5(d) and Exhibit B, pages 47-48 |
| 25. On June 20, 2014, Mr. Harper was discharged from Mercy Southwest Hospital to the WSP facility in stable condition. | Exhibit E, pages 35-36 Klein Decl, ¶ 5(d) and Exhibit B, pages 49-50 |
| 26. The Inmate Discharge Summary reflects that Mr. Harper refused the AV fistula workup recommended by Dr. Varanasi and Dr. Soto and was aware the prison facility could not provide adequate peritoneal dialysis, making hemodialysis the best option, and was willing to take the risk. | Exhibit E, pages 35-36 Klein Decl, ¶ 5(d) and Exhibit B, pages 49-50 |

| Defendant's Undisputed Material Facts | Supporting Evidence |
|---|---|
| 27. Mr. Harper was subsequently hospitalized at Mercy Southwest Hospital five more times on June 23, June 30, July 8, July 25 and August 3, 2014, secondary to increasing uremic symptoms from not being able to obtain peritoneal dialysis. | Exhibit E, pages 37-98 Klein Decl, ¶ 5(d) and Exhibit B, pages 51-112 |
| 28. There are no documented interactions between Mr. Harper and Dr. Varanasi during any of the subsequent hospitalizations. | Exhibit E, pages 37-98 Klein Decl, ¶ 5(d) and Exhibit B, pages 51-112 |
| 29. Mr. Harper eventually agreed to switch to hemodialysis during the August 3, 2014 hospitalization using the AV fistula on his right upper arm as the dialysis access point. | Exhibit E, pages 92-98 Klein Decl, ¶ 5(d) and Exhibit B, pages 106-112 |
| 30. Hemodialysis was done at the hospital without any problems and he was discharged back to the WSP facility on August 7, 2014 with instructions to undergo hemodialysis three times per week. | Exhibit E, pages 97-98 Klein Decl, ¶ 5(d) and Exhibit B, pages 111-112 |
| 31. Mr. Harper testified that he had no recollection of ever having any conversations with Dr. Varanasi at WSP. | Exhibit C, pages 6-7 Klein Decl, ¶ 5(d) and Exhibit B, pages 20-21 |

**Issue No. 2:**  The undisputed facts show that Dr. Varanasi was never negligent in the medical treatment he rendered to Mr. Harper.

| | |
|---|---|
| 32. Keith Klein, M.D. is qualified to render an opinion as to the standard of care applicable to Nephrologists. | Klein Decl., ¶¶ 1-5 and Exhibit A |
| 33. The care and treatment provided by Dr. Varanasi to Mr. Harper at all times met the applicable standard of care. | Klein Decl., ¶¶ 6-7 |

**See also Undisputed Facts as to Issue No. 1.**

**Issue No. 3:** The undisputed facts show that nothing Dr. Varanasi did or did not do caused any injury to Mr. Harper.

| 34. Keith Klein, M.D. is qualified to render an opinion as to causation. | Klein Decl., ¶¶ 1-5 and Exhibit A |
|---|---|
| 35. There is nothing that Dr. Varanasi did or did not do that caused Mr. Harper to suffer any injuries in this case. | Klein Decl., ¶¶ 6-7 |

**See also Undisputed Facts as to Issue No. 1.**

## VI. DEFENDANT VARANASI'S ARGUMENTS

Defendant Dr. Varanasi moves for an order granting summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56 on the grounds that Plaintiff is unable to raise a triable issue of fact to support his claim that Dr. Varanasi violated his rights under the Eighth Amendment to the Constitution of the United States of America, or violated the applicable standard of care with respect to the medical care and treatment provided.

Defendant Varanasi's evidence consists of the Second Amended Complaint (ECF No. 11); Declaration of Amanda Lucas, Esq., counsel for defendant Dr. Varanasi, (ECF No. 34-4), and its attached exhibits, which include: Excerpts from Plaintiff's deposition (Exhibit C), (ECF No. 34-4 at 5-11)[5]; Plaintiff's medical records from CDCR-California Healthcare Facility, Stockton (Exhibit D), ECF No. 34-4 at 12-23; Plaintiff's medical records from Mercy Southwest Hospital (Exhibit E), ECF No. 34-4 at 24-105; and Plaintiff's medical records from U.S. Davis Health System (Exhibit F), ECF No. 34-4 at 106-113; Decl. of Keith Klein, M.D., expert (ECF No. 34-5) and its attached exhibits, which include: Curriculum Vitae of Keith Klein, M.D. (Exhibit A), ECF No. 34-5 at 8-16; and Plaintiff's medical records reviewed by Dr. Klein (Exhibit B), ECF No. 34-5 at 17-127).

---

[5] All page numbers cited herein are those assigned by the court's electronic filing system (CM/ECF) and not based on the parties' pagination of their briefing materials.

1. **The Undisputed Facts Establish That Dr. Varanasi Was Never Deliberately Indifferent to Plaintiff's Medical Needs.**

The gravamen of Mr. Harper's deliberate indifference claim in this case is his contention that Dr. Varanasi refused to provide him with dialysis and instructed other providers not to let Mr. Harper go to dialysis and instead to let him die. (Second Amended Complaint, ECF 11 at 2-4.) As a result, Mr. Harper contends that he suffered cardiac arrest, went into a coma, and developed blood blisters all over his body. He also claims that his pancreas ruptured, and he lost oxygen to his brain. (Id. at 4.)

But Defendant argues that Plaintiff has no admissible evidence to support his claim. At his deposition, Plaintiff testified that he never had a conversation with Dr. Varanasi:

Q    . . . you don't have any recollection of any conversations with Dr. Varanasi where he was explaining to you that you needed hemodialysis because the prison could not provide you with peritoneal dialysis?

A    Never.· Not once.

(Pltf's Depo., ECF No 34-4 at 6:9-14.)

Q    You don't remember ever having any conversations with Dr. Varanasi?

A    No. · I remember him coming in to dialysis after I started hemodialysis, but I don't remember ever talking to him.

Q    Do you remember ever talking to Dr. Varanasi at any time while you were at Mercy Hospital during any of your hospitalizations?

A    No.· I remember him coming in there with Dr. Ahmed and Dr. Soto just one time.· I don't remember ever seeing him any other time.

Q    Okay.· And then you remember seeing him again when you were back at the prison receiving the hemodialysis and you told me he would come in and look at the paperwork that the nurses were doing; is that right?

A    Exactly, ma'am.· That's right.

Q    And did he ever have any conversations with you at any time while you were getting hemodialysis at the prison?

A    I don't believe so.· Now, he could have, but I just don't – don't remember.· I don't think he did. I don't believe he did.· I could remember seeing him standing by the little desk police guard looking at the notebooks and stuff, going back in the corner where the nurses' little station is and looking at their notebooks and stuff and turning around and leaving.· That's all I can remember about him.

(Id. at 6:20-7:21.)

Defendant argues that the only basis for Plaintiff's claim against Dr. Varanasi is Plaintiff's own self-serving testimony about what he claims that other individuals ostensibly told him, which is inadmissible hearsay.  At his deposition, Plaintiff testified:

Q    So I'm curious to know, in your responses that you gave me to our questions, you had said the basis for your deliberate indifference claim against Dr. Varanasi was that he refused to provide you with dialysis.

A    Correct. ·

Q    Is that a fair statement?

A    Yes.

Q    Okay.· What I'd like to know from you today, Mr. Harper, is what is the basis for that contention against Dr. Varanasi?

A    Because he had a meeting and in that meeting, he told his staff, do not take me to dialysis no more, to leave me in my cell and let me die.

Q    Okay.· Were you present at that meeting?

A    Someone else was.

Q    Okay.· So someone else told you that Dr. Varanasi had a meeting where he told other people not to give you dialysis?

A    Yeah.· When they would call him and tell him that I needed to go to dialysis, he would say, don't take me.

(Id. at 8:2-21.)

Q    Okay.· So I am going to ask you again then.  Who told you that Dr. Varanasi had a meeting where he instructed people not to provide you with dialysis?

14

A    Dr. Ramos.

Q    And do you remember –

A    As soon as I came back from the hospital, he came into emergency where he brought me in and he told me, Mr. Harper, I begged them not to do this to you and they did it anyway.· He said, I will write out anything you need because they were wrong.· They shouldn't have did it. ·Now -- ·

Q    And what was he referring to in your mind? ·

A    Not taking me to dialysis.

Q    Okay.· So your understanding from Dr. Ramos is that he had some sort of meeting with Dr. Varanasi where Dr. Varanasi told him not to provide you with any dialysis?

A    Him and Dr. Htay.· And nurse -- another nurse. ·He told me all what was in there, but I have to look at my notes to tell you who all was in there, but I know that Dr. Varanasi was in there, and Dr. Htay.

Q    And when did you have this conversation with Dr. Ramos?

A    The day I came back from the heart attack from the hospital, from Mercy Hospital.

Q    And this was the heart attack where you went into the coma and had the hallucinations?

A    Yes, ma'am.

(Id. at 9:16-10:19.)

Defendant also submits testimony by his medical expert, Keith Klein, M.D., qualified in the field of Nephrology.  (Decl. of Keith Klein, ECF No. 34-5 at 1-3 ¶¶ 1-4; Curriculum Vitae, ECF No. 34-5 at 8-16 (Exh. A).)  Dr. Klein opined that Dr. Varanasi complied with the applicable standard of care and that the standard of care did not require Dr. Varanasi to provide the specific form of dialysis demanded by Plaintiff.

> "After reviewing the above-mentioned records and materials, obtaining all
> of the facts concerning the care and treatment rendered to Mr. Harper, including
> the factual outline set forth above, and based upon my education, training,
> qualifications, and experience, it is my professional opinion that all aspects of the

care and treatment rendered by Dr. Varanasi to Mr. Harper met the applicable standard of care. The primary bases for my opinion are as follows: Dr. Varanasi met the standard of care by offering Mr. Harper an accepted treatment modality in the form of hemodialysis. This is particularly true given that Mr. Harper was unable to obtain peritoneal dialysis at the prison and had a functioning AV fistula that could be used as a vascular access point for hemodialysis. The fact that Mr. Harper reported that he was serving a life sentence further augmented the need to switch to the treatment modality that was readily available to him at the prison, as it was potentially dangerous to his health if he did not receive adequate dialysis.

The standard of care did not require Dr. Varanasi in this situation to provide the specific form of dialysis demanded by the patient. Although there are broad guidelines in the medical community regarding a patient's right to refuse medical treatment, in a case such as this where the treatment is required for life-sustaining purposes, the best treatment modality is within the medical judgment and discretion of the physician. That Dr. Varanasi determined it was not feasible or acceptable to continue to provide peritoneal dialysis to the plaintiff in these circumstances is perfectly reasonable, acceptable and within the applicable standard of care."

(Decl. of Keith Klein, M.D., ECF No. 34-5 at 6 ¶ 6(a)-6(b).)

**2.      The Undisputed Facts Show That Nothing Dr. Varanasi Did or Did Not Do Caused Any Injury To Plaintiff.**

Defendant argues that the Undisputed Facts show that Dr. Varanasi did not cause any injury to Plaintiff. Dr. Klein found no affirmative link between Dr. Varanasi's medical care and treatment and Plaintiff's alleged injuries.

"From a causation standpoint, there is no evidence that anything Dr. Varanasi did or did not do caused Mr. Harper to suffer any injuries in this case. The records amply demonstrate that Dr. Varanasi and the other providers had no option but to provide peritoneal dialysis on an emergent basis each time Mr.

Harper returned to the hospital with complications of increasing uremia and hypervolemia (fluid overload). Both conditions can be life threatening, as illustrated by the fact Mr. Harper suffered cardiac arrest from complications attributed to his worsening uremia and hypervolemia. This is precisely why Dr. Varanasi, as well as the other providers, were insistent that Mr. Varanasi switch to hemodialysis. However, there is nothing in the records I reviewed to suggest that any of Mr. Harper's medical issues or complaints were caused by anything Dr. Varanasi did or did not do in connection with the care and treatment he rendered to Mr. Harper."

(Decl. of Keith Klein, M.D., ECF No. 34-5 at 7 ¶ 6(c).)

In addition, Defendant argues that Plaintiff's bald unsupported allegations are insufficient to establish any competent evidence that he was harmed, much less that any alleged harm was caused by Dr. Varanasi.

### 3. A Difference of Opinion Between the Physician and The Prisoner Concerning Medical Treatment Does Not Amount To Deliberate Indifference.

Defendant argues that to the extent Plaintiff disagrees with Dr. Varanasi's recommendation that he switch to hemodialysis, Plaintiff cannot state a claim because a difference of opinion between a physician and the prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference.

## VII. DEFENDANT HAS MET HIS BURDEN

Based on Defendant Dr. Varanasi's arguments and evidence, the court finds that Defendant has met his burden of demonstrating that Plaintiff has no evidence that Defendant acted with deliberate indifference in violation of the Eighth Amendment when providing Plaintiff with medical care. Therefore, the burden now shifts to Plaintiff to produce evidence of a genuine material fact in dispute that would affect the final determination in this case.

## VIII. PLAINTIFF'S OPPOSITION

In opposition, Plaintiff restates his allegations in detail and submits copies of medical records showing that he transferred from hemodialysis to peritoneal dialysis in 2012, was treated

at Mercy Hospital for cardiac arrest in July 2014, and met with a doctor in November 2015 for evaluation of his superior vena cava syndrome. (ECF No. 37 and exhibits at pp. 6, 11, 12, & 17.) Plaintiff submits a witness list with five witnesses who are all medical providers. (ECF No. 37 at 4.) He also includes a one-page write-up concerning another case in this court, <u>Cromer v. Songer</u>, U.S. DIST. Lexis 15845, case no. 1:15-cv-01742-SAB (PC). (ECF No. 37 at 3.) In addition, Plaintiff's allegations in the Second Amended Complaint constitute evidence where they are based on his personal knowledge of facts admissible in evidence. <u>Jones</u>, 393 F.3d at 922-23.

Plaintiff argues that Dr. Varanasi deliberately withheld critical medical care from Plaintiff knowing that Plaintiff could die, causing him life-changing harm and life-long pain. Plaintiff's alleges in the verified Second Amended Complaint:

> "While I was at WSP [Wasco State Prison] I was refused lifegiving medical care. I needed peritoneal dialysis every day and I was refused [it] for seven days."

(ECF No. 11 at 5.)

> "I got sentenced to 16 yrs to life at Fresno County. County Nurse Vivian at Fresno County Jail e-mailed WSP Medical and asked them if they could accommodate an inmate who needed peritoneal dialysis. WSP Medical advised her that they could take care of that. When I got to WSP, they took all of my dialysis medicine that was sent to WSP with me. They WSP were sending me out to Mercy Hospital in Bakersfield for dialysis about 2 times a week. WSP Medical decided not to send me out for dialysis any more. Dr. Ramos told me that Dr. Varanasi had a meeting instructing medical staff not to send me/Darcy Harper out for dialysis any more. This resulted in cardiac arrest. After 7 days I went into a coma, had blood blisters all over my body, ruptured my pancreas [and] lost oxygen to my brain."

(ECF No. 11 at 5, 4.)

///

///

18

## IX.    PLAINTIFF'S EIGHTH AMENDMENT MEDICAL CLAIM

Plaintiff claims that Defendant Dr. Varanasi violated his Eighth Amendment rights by failing to provide him with proper medical care, causing him cardiac arrest and long-term pain.

### 1.    Serious Medical Need

There is no dispute in this case that Plaintiff suffered from a "serious medical need." Defendant Varanasi does not contest that Plaintiff suffered from renal disease and required dialysis.

### 2.    Deliberate Indifference

Plaintiff has not met his burden to present evidence showing that Defendant Dr. Varanasi was deliberately indifferent in response to Plaintiff's medical need.  First, Plaintiff does not recall ever having a conversation with Dr. Varanasi.  (Pltf's Depo., ECF No 34-4 at 6:9-14, 6:20-7:21.) Although Dr. Varanasi presents evidence that Plaintiff had a consultation with him about changing from peritoneal dialysis to hemodialysis at Mercy Hospital on June 18, 2014, (ECF No. 32 at 31-32), Plaintiff does not recall the consultation and only recalls seeing Dr. Varanasi once at the hospital and again back at the prison (ECF No. 34-4 at 6:20-7:21).

Plaintiff bases his deliberate indifference claim on a conversation he had with Dr. Ramos who allegedly told Plaintiff that Dr. Varanasi had a meeting and told medical staff not to take Plaintiff to dialysis any more and to leave Plaintiff in his cell and let him die.  (ECF No. 34-4 at 8:9-21.)  Plaintiff was not at the meeting (Id. at 8:15-16) and has no other evidence to support his contention that the meeting was ever held or what happened at the meeting.  This evidence is inadmissible because Plaintiff did not testify about what he personally experienced, and Plaintiff's account of Dr. Ramos' statement about the meeting is inadmissible hearsay.  Plaintiff has presented no other evidence that Dr. Varanasi acted against him with deliberate indifference. Plaintiff has indicated that he has witnesses whose testimony will support his claims, but Plaintiff has not submitted any declarations by any witnesses.

Plaintiff also fails to establish that anything Dr. Varanasi did or failed to do caused Plaintiff harm.   Plaintiff is not competent to provide medical opinion evidence sufficient to create any triable issue of fact in this case. See Fed. R. Civ. P. 56(c)(4) (affidavit or declaration

used to oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated). Plaintiff has presented no evidence that Defendant's conduct in response to Plaintiff's medical need fell below the medical standard of care so significantly that it could constitute deliberate indifference under the Eighth Amendment, or that Defendant acted unreasonably in response to the knowledge that Plaintiff faced a substantial risk of serious harm. Rather, Plaintiff's arguments rely entirely on his non-medical opinion. **Plaintiff's opinion testimony is not admissible under Rule of Evidence 701 because he is a layman and not a medical expert:**

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> **(a)** rationally based on the witness's perception;
>
> **(b)** helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> **(c)** not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

Accordingly, based on the foregoing, the court **should grant Defendant** Dr. Varanasi's motion for summary judgment on Plaintiff's § 1983 claim of deliberate indifference in violation of the Eighth Amendment.

## X. CONCLUSION AND RECOMMENDATIONS

The court finds that based on the undisputed facts, Defendant Dr. Varanasi's motion for summary judgment, filed on January 8, 2021, should be granted.

Therefore, based on the foregoing, it is **HEREBY RECOMMENDED** that:

1.   The motion for summary judgment filed by Defendant Dr. Varanasi on January 8, 2021, be GRANTED as to Plaintiff's § 1983 claim under the Eighth Amendment;

2.   Summary judgment be granted to Defendant Dr. Varanasi;

///

3.  This case now proceed only against defendants Dr. Htay and Dr. Ramos on Plaintiff's §1983 claims for inadequate medical care in violation of the Eighth Amendment;

4.  The Clerk of Court be directed to reflect Defendant Dr. Varanasi's dismissal from this case on the court's docket; and

5.  This case be referred back to the Magistrate Judge for further proceedings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within fourteen (14) days** from the date of service of these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten **(10) days** after the date the objections are filed. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson, 772 F.3d at 838-39 (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __May 23, 2021__         _____ **/s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE